## City of Louisville v. Arrowsmith.

(Decided November 23, 1911.)

Appeal from Jefferson Circuit Court.
(Common Pleas Branch, First Division).

Cities—Streets—Permitting Street to Become and Remain in Unsafe Condition—Knowledge—Injury to Person Falling Into Hole.—The plaintiff charges that the city negligently permitted its street to become and remain in a dangerous condition, and the evidence showed that the city had knowledge of such condition; in crossing the street she fell into a hole and was severely injured. Held, It is the duty of a city to maintain its streets in a reasonably safe condition for public travel is one it cannot delegate to another so as to avoid liability from injury resulting from their defective condition. The evidence showing that plaintiff suffered great pain, preventing her from doing work and that the injury is permanent and she will be a cripple for life, a verdict for $5000.00 was reasonable, and in the absence of an error prejudicial to appellant's substantial rights, the verdict will not be disturbed.

CLAYTON B. BLAKEY, HUSTON QUIN and J. W. S. CLEMENTS for appellant.

R. L. PAGE, KOHN, BAIRD, SLOSS & KOHN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On the 24th of June, 1907, Annie Arrowsmith was a passenger upon one of the cars of the Louisville Railway Co. going west on Market street. As the car approached the intersection of Market and Preston streets she signalled for the car to stop. It did stop at the intersection of said streets and she undertook to alight therefrom. While she was in the act of alighting, or just after she had left the car, she was thrown, or fell, violently to the ground, sustaining serious and permanent injuries. Shortly thereafter she instituted a suit against the Louisville Railway Company, in which she sought to re-

cover damages for her injuries, which, she charged, were due to the negligent operation of the car by the agents and servants of said company. After a time this suit was dismissed without prejudice and a new suit filed, in which she charged both the Railway Company and the city with negligence. The negligence alleged against the railway company was that those in charge of the car, when she was in the act of alighting, started it suddenly, thus causing her to fall; and the negligence charged to the city was that it had suffered and permitted its street at that point to become and remain so out of repair as to be unfit for public travel. The company and the city filed separate defenses, the effect of each of which was a complete denial of liability. Upon the issue raised by the pleading the case was submitted to a jury for trial, with the result that the plaintiff recovered a verdict against the defendants jointly for $3,000. On behalf of the city a motion was at once made for a judgment non obstante veredicto; and, without waiving its right under this motion, the city, and the Railway Company as well, filed a motion and grounds for a new trial. Upon consideration this was granted. Later a second trial was had, this taking place about four years after the date of the injury. Upon this occasion plaintiff recovered a verdict against the city for $5,000; the jury awarding no damages against the Railway Company. The city thereupon renewed its motion for a judgment non obstante veredicto; also its motion and grounds for a new trial; both of which motions were overruled and a judgment entered upon the verdict. The city appeals.

Many reasons are assigned why the judgment should be reversed. First, it is urged that the court erred in putting the case upon its trial the second time without having disposed of appellant's motion for a judgment notwithstanding the verdict made on the former trial. This motion was renewed after the rendition of the verdict upon the last trial and as the same reasons are urged for sustaining this motion now as then, both can be considered together. The basis of this motion is the charge that the pleadings failed to state a cause of action against the appellant city. The petition specifically charges that the city negligently permitted its street, at the intersection of Preston and Market streets, "to become and remain in a dangerous and defective condition, by reason of the existence of large holes in said intersection and near the said intersection of said streets;

and that said dangerous and defective condition of said streets at said intersection was permitted and allowed by the defendant City of Louisville to exist for a long time prior to the happening of the wrongs and injuries hereinafter complained of; and that the defendant, City of Louisville, knew, or by the exercise of ordinary care could have known of the said defective condition at or near their intersection; that when she was in the act of alighting from the car of the defendant Railway Company, the employees and servants in charge and control of said car "by gross negligence so managed and controlled the same that it was started in sudden and violent motion while the plaintiff was in the act of alighting and she was thereby thrown to the ground and upon and into the said defective and dangerous portion of the said Preston and Market streets at and near the intersection and into the holes and depressions upon said street at said intersection and was thereby caused and made to fall with violence upon the ground and to sustain great suffering and permanent injuries to her person, as follows." Then, after describing the nature and extent of her injuries, the petition continues: "That all of the said injuries were the direct and immediate result of the joint and concurring gross negligence of the defendant, City of Louisville, in permitting the said holes, and depressions and defective and dangerous condition of said streets at said intersection and of the defendant, Louisville Railway Company, its agents and servants in charge and control of said car in negligently starting the said car in motion, while the plaintiff was in the act of alighting. Plaintiff states that her said injuries and damages were brought about by the wrongful acts of the defendants, City of Louisville, and Louisville Railway Company," etc. The petition, in as plain language as could well be stated, charges that the plaintiff was injured through the joint and concurrent negligence of these two defendants; that the negligence of the city consisted of permitting the street to become in an unsafe condition for public travel and suffering it to remain in this condition; and that the negligence of the Railway Company consisted in starting its car suddenly. The starting of the car caused her to lose her balance, or cast her, as it were, in the direction of, if not into, the holes in the street. If the surface of the street had been suitable for public travel it might well have been argued that plaintiff may not have been injured at all, or would not have received injuries to so great an extent. But,

whether the Railway Company caused her to fall into the hole in the street or not is immaterial for the purposes of this case. The hole was there and she did fall into it and was injured thereby.

This identical question was before this court in the case of the City of Louisville v. Hart's Adm'r., 143 Ky., 171. There the conditions were exactly reversed. The hole in the street caused Hart to be cast from a wagon upon the track immediately in front of a rapidly moving car, which, before it could be stopped, ran upon him and so injured him that he died. Now, the Railway Company in that case had nothing whatever to do with the casting of decedent upon the track. He was there without fault upon the part of the Railway Company. The negligence which caused him to be thrown upon the railway track in a perilous position was that of the city in suffering and permitting its street at that point to become out of repair and unsuitable for public travel. The Railway Company was held to be negligent in that it was operating its car at an excessive rate of speed, it being held that if the car had been operated at a proper rate of speed, those in charge of it could have stopped it, after discovering decedent's peril, in time to have avoided injuring him. Each was held to have contributed to the injury and death of Hart.

Here the Railway Company is charged with having, by a negligent act, caused appellee to fall and the city is charged with being negligent in not maintaining its street at that point in a suitable condition for public travel; and by reason of this negligence, when appellee fell into the hole, she was injured. Where two independent causes have each contributed to produce an injury, either or both may be held liable therefor. As was said in the Hart case, supra:

"Of course, when there is only one cause to which the injury or wrong is directly traceable, as when a person intentionally shoots another, or where a passenger on a railway train is injured by a defect in the car in which he is riding, there is no difficulty in determining what was the proximate cause of the injury. But, in cases in which there is more than one cause or act connected with or concerned in producing the injury, the books are full of decisions determining which one of the causes or acts was the proximate cause. As a result of the infinite variety of cases presenting this question, it is easy to find authority that will apparently support each side in almost any controversy in which a doubtful

question arises. To attempt to reconcile these cases would be the height of folly. In truth, when carefully studied, there is really little conflict between them. The apparent conflict grows out of the difference in facts to which must be applied the principle that controls. Or, as stated by Justice Miller, in Louisiana Life Ins. Co. v. Tweed, 7 Wallace, 44, 19 L. Ed., 65, in speaking of this subject: 'It would be an unprofitable labor to enter into an examination of these cases. If we could deduce from them the best possible expression of the rule, it would remain after all to decide each case largely upon the special facts belonging to it and often upon the very nicest discrimination.' "

Continuing, the court says:

"Hart, on account of defects in the street that rendered it unsafe for travel was thrown from his wagon and fell on the street car track immediately in front of an approaching car that was running at a dangerous and negligent rate of speed and was run over and killed by the car. Now, we may assume that if the street had been reasonably safe he would not have been thrown from his wagon and of course would not have been killed. We may further assume that if the street car had been operated with ordinary care, that it could have been stopped before striking him, and so, although the defective condition of the street caused him to fall on the track, he would yet have escaped injury except for the negligence in the operation of the car. We have then two approximately concurring acts of negligence by two independent agencies that brought about his death. Neither act of negligence in itself, without the co-operation of the other, would have harmed him. On the one hand, however fast the car was going, unless he had been thrown in front of it, he would not have been killed. On the other hand, although thrown on the car track by the bad street, he would have escaped death if it had been prudently operated. The question now is, which of these acts of negligence was the proximate cause of his death. We think that both of them may be so treated. Two agencies acting entirely independent of the other as in this case may jointly and concurrently be the proximate cause of an injury, when it would not have happened except for the concurrence at approximately the same time and place of the two negligent acts.

It is difficult to distinguish that case from the case at bar. Reversing the facts, the question as to the manner in which it happened is almost identical. There

the defective condition in the street caused the man to be thrown upon the track, where, through the negligence of those operating the car, he met his injury. Here the negligence of those operating the car caused appellee to be thrown upon the street and the defective condition of the street at that point caused her to fall to her serious injury. Clearly the motion for a judgment notwithstanding the verdict should have been overruled; and no ground of complaint is afforded because the court neglected or failed to pass upon this motion at the conclusion of the first trial and before the second trial was entered upon.

It is next insisted for the appellant that the court should have given to the jury an instruction telling them what was the proximate cause of the injury, i. e., defining proximate cause. This question was passed upon and disposed of adversely to this contention in the case of City of Louisville v. Hart's Adm'r, supra. It was there held that the court did not err in not defining proximate cause, as such an instruction would have tended to confuse rather than enlighten the jury.

Appellant next complains that the court erred in permitting photographs, taken sometime after the accident, to be introduced as evidence, showing the condition of the street at the point where the accident occurred. This objection is not well taken, for the witnesses, other than the photographer who took the photographs, testified that they accurately illustrated and described the condition of the street at that point at that time. It is not contended that the condition of the street at that point had changed in any particular between the date when the photographs were taken and the time of the accident. The street was in a wretched condition, as appears from the evidence of the witnesses, whose testimony upon this point is uncontradictd. Not only so, but the evidence shows conclusively that knowledge of this defective condition of the street at that point was brought home to the city authorities some time before the date of this accident and that it had remained in that condition for several months; and that at that particular point there were holes in the street in which a child could be buried. It is not surprising, under these conditions, that when appellee was thrown forward, if she was, by the sudden movement of the car, or if not, when she attempted to cross the street behind it and lost her balance and fell into this hole, she was seriously injured. It is urged for appellant that these photographs must have been

taken at least a year after the accident occurred. But there is no proof in the record justifying this charge, and it is hardly probable that the city would have permitted its street to remain in this dangerous condition, as it is described by all of the witnesses to have been in, for so long a time after so serious an accident had been reported as happening there. But we are not left to speculate upon this matter. The photographer fixes the time in July and all the witnesses agree that the photographs depict accurately the condition of the street as it was when the accident happened; and there is no evidence to the contrary. Under this showing there is no merit in the complaint that these photographs should not have been admitted as evidence.

The point is likewise made that the city should not be held liable for accidents resulting from a defective condition of its streets while counties are exonerated from liability for accidents occurring upon their public roads. The reason for this distinction has many times been assailed as not altogether sound, but our court is so thoroughly committed to this doctrine that a discussion of the reason for the rule would be a useless waste of time.

It is next urged that, as it is the primary duty of the Railway Company to keep the streets between and near its tracks in repair, the city should not be held liable, even though the accident resulted from a defective condition of the street near or between the rails. If the question were one between the city and the Railway Company, a consideration of this point would be entered into; but as between the traveling public and the city, the duty of the city to maintain its streets in a reasonably safe condition for public travel is one which it cannot delegate to another so as to avoid liability for injury resulting from their defective condition.

The Kentucky authorities cited by appellant as supporting this view are not in point. In Groves v. Louisville Railway Company, 22 Rep. 599, while it is held that the Railway Company is liable for damage resulting to one because it permitted its rails to be so high above the bed of the street as to render public travel over them unsafe, it is distinctly held that "the city * * * would be liable for failing to discharge its duty in respect to repairing streets." In Sweet v. Louisville Railway Co., 25 Rep., 2279, the duty of the city to maintain its streets in a safe condition for public travel is recognized. All that case decides is that it is the duty of the Railway

Company to either discharge its passengers from its cars at a safe place, or, if this cannot be done, to warn them of the dangerous condition of the place where they are discharged.

Another ground urged for a reversal is that the verdict is excessive. The injury occurred about four years before the date of this trial. This young woman, about eighteen years old when she received her injury, had not been able to do anything during those four years. She had practically lost the use of her ankle, most of the time had been unable to wear her shoe and all of the time suffered great and excruciating pain. The doctors who treated her showed in their testimony that the injury was a peculiarly aggravated one. There was a fracture of both bones just above the ankle joint, and, as testified by Dr. Willmoth, "The amount of pain she suffers now after the acute state is over, depends upon whether she walks on it. As long as she sits around she will not have much pain, except the rheumatic condition. The amount of pain is in direct proportion to the amount of use she puts her ankle to." This evidence from the physician describes perfectly the pitiable condition in which this accident has left appellee. Not only has she suffered great and excruciating pain, which prevented her from doing anything looking toward earning a living during the period that elapsed from the date of the injury to the trial, but the injury is permanent, and she must remain a cripple the balance of her life. Her sphere of activity in life is circumscribed and, being uneducated, she must devote herself to such duties as can be performed while remaining in a sitting position. Under this evidence the damages awarded were reasonable. Verdicts for larger sums have in many instances been upheld in cases where the injury was not more severe.

In L. & N. R. R. Co. v. Melton, 32 Rep., 51, a verdict for $7,000 was upheld where a man forty-two years of age, a carpenter by trade, was so seriously injured as to be unable to follow his usual vocation and suffered great mental and physical pain.

In Louisville, et al R. Co. v. Owens, 29 Rep., 1294, a verdict for $6,500 was upheld as not being excessive where a young girl was so injured that she was confined to her bed for a considerable time and at the trial was only able to walk on crutches.

In C. R. Co. v. Champ, 31 Rep., 1054, a verdict for $8,500 was upheld as not being excessive. In that case

the plaintiff was seriously injured, though it was not shown at the trial that any of the injuries were certainly permanent.

In City of Louisville v. Bailey, 25 Rep., 6, a verdict for $7,000 was upheld, where the plaintiff was shown to have been so injured that she was confined to her bed for about four months, was severely bruised on her left hip, side and shoulder and made lame for several months and suffered internal injuries which caused intense pain.

Many other cases might be cited where verdicts as large as that in the case under consideration were upheld as compensation for injuries less severe.

Lastly, it is urged that the city was prejudiced before the jury by reason of the closing argument of counsel for appellee. The particular ground of this complaint is that the appellee requested the jury to find a verdict against the city, as he was doubtful if the evidence against the Railway Company was strong enough to justify a finding against it. The instructions given by the court specifically authorized the jury to find against either defendant, one or both. Plaintiff had testified that from her best recollection of how the accident occurred, she had her hand upon the car when it started and this caused her to fall. As opposed to this the Railway Company had introduced several witnesses who testified that the car was some feet away from plaintiff at the time when she fell in attempting to cross the street. We are of opinion that it was not prejudicial error, if error at all, for counsel for plaintiff to state to the jury that the case against the city was stronger than the case against the Railway Company and he preferred a verdict against the former. But any doubt which might be entertained as to the propriety of permitting this character of argument was removed by the admonition of the court given at the time to the jury to the effect that, in reaching their conclusion, they must be guided by the instructions alone. Under this admonition the statement by plaintiff's counsel in his argument could not have misled the jury or been prejudicial to appellant.

We fail to find any error prejudicial to the substantial rights of appellant.

Judgment affirmed.