## Gaines' Administratrix v. City of Bowling Green.

(Decided October 31, 1930.)

G. D. MILLIKEN for appellant.

RODES & HARLIN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On October 28, 1928, Charlie Gaines was killed in an automobile accident at the intersection of College and Fifth streets in Bowling Green, Ky.

The city of Bowling Green had entered into a contract with the Merkle Construction Company to lay pipe for its water system along certain streets, including Fifth street. The pipe had been laid along the north margin of Fifth street and across College street at the intersection of the two streets. College street is 39 feet wide. About two-thirds of the ditch across College street had been partly filled and the subsurface concrete base had been laid preparatory to receiving the surface treatment of asphalt which would restore that portion of the street to its original condition. The remaining one-third of the ditch across College street had been filled in with earth to approximately the street level, so that automobiles might pass on that side. The part of the ditch which was entirely filled was on the west side of College street and on the left-hand side going northward. On the east side of College street where the ditch had been partly

filled a pile of earth and broken asphalt, six to eighteen inches high, remained along the north edge of the ditch. The part of the ditch which had not been completely filled, according to some of the witnesses, was more than a foot deep.

On October 27, 1928, the decedent, Gaines, had worked until 9:30 or 10:00 o'clock in the evening. Before going home he drove in his automobile about the streets of Bowling Green accompanied by W. C. Tow. About midnight they decided to go to a road house on the Dixie highway a short distance north of Bowling Green. The decedent drove his automobile down College street until he reached Fifth street where he turned to the left side of the street to avoid the obstruction, and passed through the passageway left for that purpose. He continued north on College street, and when he and Tow reached the road house it was closed. He at once returned to Bowling Green. As he drove south on College street and on the right-hand side of the street, which was the west side, and as he approached Fifth street, a car traveling in the opposite direction, and driven by L. G. Crumbly, turned from the east side of the street as it approached the intersection with Fifth street, passed around the obstruction in the street and turned back toward the east side of the street. Decedent, who was approaching the intersection from the north, attempted to pass Crumbly's car on the left, and the right fender of his car struck the right fender of Crumbly's car, and Gaines' car swerved to the right, overturned, and rolled across Fifth street. Both Gaines and Tow were thrown from the car, and Gaines was killed. The two automobiles collided about 30 feet north of the intersection and of the ditch.

Gaines' administratrix brought an action against the city of Bowling Green, the Merkle Construction Company, and L. G. Crumbly for $25,500 damages for the death of Gaines. The petition alleged that the city and the Merkle Construction Company had negligently failed to keep and maintain any lights, signals, or warning of any kind on or near the ditch and embankment, and that by reason of such negligence, and the concurring negligence of Crumbly in the operation of his car, decedent's car was caused to be overturned and Gaines to be thrown therefrom and killed. The Merkle Construction Company was never summoned. At the conclusion of all the

evidence the motion of the city of Bowling Green for a peremptory instruction in its favor was sustained, and the plaintiff has appealed.

After the motion of the city for a peremptory instruction had been sustained, the petition, on motion of the plaintiff, was dismissed without prejudice as to Crumbly. The defendant, city of Bowling Green, introduced proof tending to show that red lights were maintained on or near the unfilled part of the ditch across College street, and that it was under a large electric light and plainly visible. However, appellant's proof tends to show that no lights were maintained on or near the ditch, and in testing the correctness of the trial court's ruling in sustaining the motion for a directed verdict in favor of the city, only the evidence introduced by the appellant can be considered.

It appears that the trial court sustained the motion for a directed verdict on two grounds: (1) Gaines knew of the obstruction and therefore was not entitled to notice and (2) the ditch was not the proximate cause of the accident resulting in Gaines' death.

Since we have concluded the trial court correctly sustained the motion upon the second ground, it becomes unnecessary to discuss or determine the question as to whether or not the fact that Gaines had just before the time the accident happened traveled northward on College street, observed the ditch at the intersection of College and Fifth streets, and pulled to the left to avoid it to pass through the passageway provided for traffic, constituted such knowledge on his part as would render notice by the city unnecessary. When a ditch is left open in a street, or when any obstruction is placed therein under circumstances similar to those in the instant case, it is the duty of the municipal authorities to establish lights or other signals to warn travelers of the danger. While the city has a right to make such excavations in, and place such obstructions on, its public streets as may be necessary and proper for the purpose of making public improvements, yet in doing this it must use reasonable care and take such reasonable precautions as the nature of the case requires to safeguard travelers upon the street against injury from such excavations and obstructions. This duty is absolute, and the city is liable for injuries caused by unguarded obstructions, even though the nuisances are due to acts of an

independent contractor. City of Glasgow v. Gillenwaters, 113 Ky. 140, 67 S. W. 381, 23 Ky. Law Rep. 2375; City of Carlisle v. Campbell, 151 Ky. 279, 151 S. W. 673; Lampton & Burks v. Wood, 199 Ky. 250, 250 S. W. 980. But before the city can be held liable it must be shown by sufficient evidence that its negligence was the proximate cause of the injury; mere surmise and conjecture that the negligence was the proximate cause of the injury are not sufficient. The maxim, "Causa proxima, non remota, spectatur," does not mean that the cause which is nearest in point of time or space is necessarily to be deemed the proximate cause, but it does mean, where an act of negligence is relied on for recovery for an injury, that such act must have been the efficient procuring cause of the injury. The train of causes must be unbroken in order to hold the originator of the first cause responsible for the injury. If an independent cause intervenes which is of itself sufficient to produce the result, it is regarded as the proximate cause, and the originator of the first cause is relieved from liability. Dunn v. Central State Hospital, 197 Ky. 807, 248 S. W. 216; Cundiff v. City of Owensboro, 193 Ky. 168, 235 S. W. 15; Paducah Traction Co. v. Weitlauf, 176 Ky. 82, 195 S. W. 99, L. R. A. 1917F, 353; Stephens v. Stephens, 172 Ky. 780, 189 S. W. 1143; Young v. N. & W. Ry. Co., 171 Ky. 510, 188 S. W. 621; Judd's Administratrix v. Southern Railway Co., 171 Ky. 832, 188 S. W. 880.

The construction of the ditch across College street was not an act of negligence on the part of the city, but its negligence consisted in the failure to properly guard the ditch at night. A passway for vehicles was left on the west side of College street, and vehicles traveling north on College street were required to cross to the west side of the street, go through the passageway, and then turn to the right to avoid the ditch. This is what Crumbly did and is what he would have done if the ditch had been properly lighted. The existence of the ditch in the street may have furnished a condition or occasion for the accident, but even it was not the proximate cause of the injury to appellant's intestate. It is argued, if the ditch had been lighted, Gaines would have approached the intersection of Fifth and College streets more carefully and would not have attempted to pass Crumbly's car on the left, but this is mere conjecture. According to the witness, Tow, Gaines had passed along College

street in the opposite direction a few minutes before and necessarily observed the ditch as he turned to the left side of the street to avoid it. The collision occurred 30 feet north of the ditch, and it is possible that Gaines, who apparently was traveling at a rapid rate of speed, was of the opinion that he could pass on the left of Crumbly's car and still avoid the ditch. Admitting that the ditch was insufficiently guarded, yet the fact remains had it not been for the act of Crumbly in turning to the right in front of Gaines or the act of Gaines in attempting to pass Crumbly's car on the left, Gaines would have passed to the right of the ditch without harm. As said in Louisville & Nashville Railroad Co. v. Napier, 223 Ky. 417, 3 S. W. (2d) 1070, 1071, 64 A. L. R. 513: "The most that could be said is that it furnished the condition or gave rise to the occasion by which the injury was made possible." Also see Setter's Adm'r v. City of Maysville, 114 Ky. 60, 69 S. W. 1074, 24 Ky. Law Rep. 828; Overton's Administratrix v. City of Louisville, 221 Ky. 289, 298 S. W. 968.

Tow, who was in the Gaines car, testified that he saw Crumbly's car turn obliquely from the east side of College street to the west side, and that he assumed the driver was going to park the car. After approaching the west curb, however, it suddenly turned to the right, and Gaines turned his car to the left and toward the center of the street and attempted to pass Crumbly's car on the left. Just as the cars collided Tow observed the obstruction in the street about 30 feet away, and about the same time the car in which he was riding turned to the right and he said that Gaines must have then for the first time observed the obstruction and turned the car in an effort to avoid it. This was a mere conclusion on the part of the witness. He admitted that he was thrown against the windshield of the automobile in which he was riding when the two automobiles collided and was immediately rendered unconscious.

Appellant relies on Louisville Home Telephone Co. v. Gasper, 123 Ky. 128, 93 S. W. 1057, 29 Ky. Law Rep. 578, 9 L. R. A. (N. S.) 548, and City of Louisville v. Arrowsmith, 145 Ky. 498, 140 S. W. 1022, but the facts in both of those cases are distinguishable from the facts here. In the Gasper case the telephone company maintained a guy wire in an alley in the city of Louisville, and plaintiff was injured when the driver of a wagon

negligently drove against the guy wire upsetting the wagon on the plaintiff. The telephone company negligently maintained the wire in the alley and the driver of the wagon negligently drove against it, and the concurring negligence of the two caused the injury.

In the Arrowsmith case the plaintiff alighted from a street car upon a defective place in the street, and just as she stepped from the street car it moved, and the motion of the car, combined with the defective place in the street caused her injury. The negligence of the city in permitting the defective place in the street and the negligence of the railway company in prematurely moving its car were concurring causes of plaintiff's injury.

In the instant case, if Gaines' automobile had struck the unguarded obstruction in the street and had been thereby caused to collide with the Crumbly automobile, although the latter was negligently driven, or if the Crumbly automobile had struck the unguarded obstruction and the collision had been thus caused, the Gasper and Arrowsmith cases would be in point. Under the circumstances it is a matter of pure speculation as to what aid lights on the obstruction would have afforded, and the court was justified in giving the directed verdict on the ground that the injury was not the proximate result of any negligence upon the part of the city.

Wherefore the judgment is affirmed.